UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HEMENWAY, | No. C-11-505 DMR |
| Plaintiff(s), | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| ERIC K. SHINSEKI, | |
| Defendant(s). | |

Defendant Eric K. Shinseki, Secretary of the Department of Veteran Affairs ("VA"), moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiff Brian Hemenway's Title VII employment discrimination Complaint for lack of subject matter jurisdiction or, in the alternative, pursuant to Federal Rule of Civil Procedure 56 for summary judgment. Plaintiff opposes the motion. The parties have filed consents to this court's jurisdiction pursuant to 28 U.S.C. § 636(c). [Docket Nos. 19, 32 Ex. A.] The court finds the motion appropriate for resolution without a hearing. *See* N.D. Cal. Civ. L. R. 7–1(b). For the reasons stated below, the court grants Defendant's motion to dismiss.

### I. Background and Procedural History

This employment discrimination case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Plaintiff has been an Equal Employment Opportunity ("EEO") specialist in the VA's Office of Resolution Management ("ORM") since 2000, currently working as an EEO

case manager. (Def.'s Mot. Ex. P (Hemenway Dep., Dec. 18, 2011) at 12:12-22, 13:8-10). On or about May 16, 2007, he contacted EEO counselor Thurie Kelly about various employment discrimination concerns. (Compl. Attach. 1 ("EEOC Decision") at 1 & n.1; Hemenway Dep. 64:19-66:3; Def.'s Mot. Ex. F.) Plaintiff was assigned to an outside counselor, Warren Triesman. (Hemenway Dep. 67:3-11.) Triesman drafted a report of Plaintiff's claims on August 26, 2007 and sent Plaintiff a copy. (Hemenway Dep. 63:6-64:8. *See generally* Def.'s Mot. Ex. G ("Triesman Report").) The reported listed the following as Plaintiff's claims:

> **CLAIM 1:** Whether the aggrieved was discriminated against on the basis of Race, Color, Gender, and Reprisal when on Effective [sic] March 1, 2007, the aggrieved was reassigned to an Intake Specialist Position.
>
> **CLAIM 2:** Whether the aggrieved was discriminated against on the basis of Race, Color, Gender, and reprisal when in February 2007, the agency failed to process AP's CA-1 form and failed to provide AP a supervisory receipt for the CA-1 form.
>
> **CLAIM 3:** Whether the aggrieved was discriminated against on the basis of Race, Color, Gender, and reprisal when in March 2007, the agency deducted from AP's payroll for a previous overpayment without notice to AP.
>
> **CLAIM 4:** Whether the aggrieved was discriminated against on the basis of Race, Color, Gender, and reprisal when in approximately August, [sic] 2007, the agency notified AP that management was disciplining AP.

(Triesman Report 7.) It also stated that Plaintiff "was informed that the claims listed above were the only claim(s) addressed during the informal EEO counseling. If a formal Complaint of Discrimination is filed, claims not discussed with ORM may not be accepted for formal complaint processing." (Triesman Report 7.)

On August 15, 2007, Triesman sent Plaintiff a letter which contained a notice of right to file a discrimination complaint. (Def.'s Mot. Ex. H (Right to File Letter); *accord* EEOC Decision at 1; Hemenway Dep. 86:7-17.) The letter stated that Plaintiff had 15 calendar days from the receipt of the notice to file a formal complaint and listed addresses at which to file it: (1) "Department of Veterans Affairs, Office of Employment Discrimination Complaint Adjudication [OEDCA], 810 Vermont Avenue, NW, Washington, DC [sic] 20420," (2) "Secretary of Veterans Affairs, Department of Veterans Affairs, 810 Vermont Avenue, NW, Washington, D.C., 20420," or (3) "Deputy Assistant Secretary (08), Office of Resolution Management (ORM), 810 Vermont Avenue,

NW, Washington, D.C. 20420." (Right to File Letter at 2-3.) Plaintiff claims that he mailed a formal complaint to the Secretary of Veterans Affairs by certified mail on September 19, 2007. (Hemenway Dep. 109:13-16, 110:15-23, 115:21-116:8; *accord* EEOC Decision at 1.) Plaintiff concedes that he never received an "acceptance or dismissal or partial acceptance" of his complaint, "which would have typically been issued after that," (Hemenway Dep. 122:1-4), nor asked for an investigation, (Hemenway Dep. 137:9-18). Defendant insists that it "never received any such complaint." (Def.'s Mot. 5 (citing Def.'s Mot. Ex. B (Kelly Decl., Apr. 10, 2012) at ¶¶ 5, 8-10); *accord* EEOC Decision at 1-2.)

Plaintiff contends that he sent a letter to Kelly on September 5, 2008 and again on January 16, 2009, inquiring about the status of his purported complaint. (Def.'s Mot. Ex. K.) Kelly insists she never received either letter, and Plaintiff claims that they were returned to him as undeliverable. (Kelly Decl. ¶ 6; Hemenway Dep. 138:22-139:8.) On February 1, 2010, over two years after Plaintiff asserts that he filed his complaint, the Equal Employment Opportunity Commission ("EEOC") received a hearing request from Plaintiff, who voiced concern that more than 180 days had elapsed since he filed his complaint and that the agency had not investigated his case. (Def.'s Mot. Ex. L (Hearing Request Letter); *accord* EEOC Decision at 1; Hemenway Dep. 149:8-150:14.) Pursuant to the request, an EEOC supervisory administrative judge ("AJ") issued an order on February 8, 2010, instructing Defendant to produce Plaintiff's complaint file. (Def.'s Mot. Ex. C (order to Defendant); *accord* EEOC Decision at 1.) According to Defendant, the order marked the first time that it had heard of Plaintiff's purported complaint. (Def.'s Mot 5 (citing Kelly Decl. ¶ 4).) Defendant contacted Plaintiff and asked if he had any record of the alleged complaint's delivery. (Def.'s Mot. 5 (citing Hemenway Dep. 151:23-25).) In response, Plaintiff did not provide a copy of the complaint, but instead sent Defendant two copies of the same USPS Track and Confirm sheet. (Def.'s Mot. Ex. M (February 26, 2010 and March 1, 2010 letters submitting USPS Track and Confirm Sheet); *accord* Hemenway Dep. 151:18-22, 152:8-16.) The AJ also contacted Plaintiff about the absence of a formal complaint. Again, Plaintiff failed to provide a copy of a complaint, but instead submitted an e-mail from Defendant's EEO office "which makes vague reference to both an informal and formal complaint." (EEOC Decision at 2; *see* Def.'s Mot. Ex. D at 1.) The AJ

3

1  remanded the case to Defendant on April, 28, 2010, finding that the e-mail did not substantiate that

2  Plaintiff had filed a formal complaint, and that there was not enough evidence of a formal complaint

3  to trigger the EEOC's jurisdiction:

> Mr. Torres' email does not provide any information to substantiate [Plaintiff]'s claim that this "formal complaint" corresponds to [his case number]. Furthermore, [*Plaintiff*] *has been unable to produce a copy of a formal complaint or a letter from the Agency accepting his claims*. Since [Plaintiff] himself is a GS-13 EEO Specialist, it is unclear why he waited from September 2007 (when he contends he filed his formal complaint) until February 2010 (when he requested a hearing) to raise the issue of a lack of investigation. In any case, there is not enough evidence of a formal complaint specifically relating to [Plaintiff's case number] for the EEOC to assert jurisdiction. . . . The Agency should either formally dismiss the allegations in [Plaintiff's case] for lack of a formal complaint and provide [Plaintiff] with his appeal rights to OFO [Office of Federal Operations] or accept the allegations and initiate an investigation.

(Def.'s Mot. Ex. D (order remanding case) at 1-2 (emphasis added); *accord* EEOC Decision at 2.)

Defendant issued a Final Agency Decision on May 21, 2010, dismissing Plaintiff's complaint "because there is insufficient evidence that it was actually filed and because, in any case, the complainant has not diligent pursued it." (Def.'s Mot. Ex. E at 4 (Final Agency Decision); *accord* EEOC Decision at 2.)

Plaintiff appealed to the EEOC's OFO, which dismissed the appeal on October 29, 2010. (*See generally* EEOC Decision.) During this appeal, for the first time, Plaintiff submitted a copy of the first page of a formal complaint. The EEOC nevertheless affirmed the dismissal:

> *[Plaintiff] was unable to provide a copy of the formal complaint or a letter from [Defendant] acknowledging receipt of the complaint*. The Commission agrees with the AJ's determination that the Track and Confirm sheet and the vague email are insufficient evidence to establish that a formal complaint was timely filed.
> *For the first time on appeal, [Plaintiff] presents a copy of the first page of a formal complaint*. The document appears to be date stamped by the "Office of Resolution Management October 11, 2007," and "received" stamped September 25, 2007. [*Plaintiff*] *asserts that this evidence "was not available" when the matter was before the AJ, and fails to explain, when or from where it was obtained*. Further, there is no basis, claim or date of occurrence reflected on the form. Although the document repeated [sic] referenced an attachment, it is not included in the instant record.
> [Plaintiff] waited over two years after he purportedly filed his formal complaint to request a hearing. We find that, particularly in light of the fact that [Plaintiff] was an EEO Specialist who should have been familiar with the EEO process, he did not diligently pursue his case. Consequently, the doctrine of laches is applicable in the instant matter.

(EEOC Decision at 3 (emphasis added).)

4

Plaintiff appealed to this Court on February 2, 2011. [Docket No. 1.] He claims that Defendant subjected him to "an ongoing pattern of harassment and hostile work environment from 2002 through 2007." (Compl. ¶ 6.) The specific incidents include the following:

> Hostile Work Environment (2002-2007); per se reprisal (2002-2007); disparate treatment (2002-2007); directed reassignment (March 1, 2007); assignment of duties (2002-2007); duty assignments (2002-2007); admonishment (June 14, 2007); denial of flexiplace [sic] (2002-2007); denial of transfers (2002-2007); failure to process OWCP [Office of Workers' Compensation Program] paperwork (through 2007 ongoing); failure to repair or provide operative computer equipment (2002-2007),

(Compl. ¶ 4) which stemmed from discrimination based upon Plaintiff's race or color, sex, age, and "reprisal for protected EEO activity" (Compl. ¶ 5). Defendant now moves to dismiss Plaintiff's Complaint on several grounds or, in the alternative, for summary judgment.

## II. Standard of Review

A court will dismiss a party's claim for lack of subject-matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). When reviewing a 12(b)(1) motion, the court sculpts its approach according to whether the motion is "facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge asserts that subject-matter jurisdiction does not exist, independent of what is stated in the complaint. *White*, 227 F.3d at 1242. In contrast with a facial challenge, a factual challenge – such as the motion at bar – permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *Id.* Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *see Camper v. Potter*, No. CV-07-2251, 2009 WL 2714023, at *2 (D. Ariz. Aug. 27, 2009) (not reported in F. Supp. 2d) ("The jurisdictional issue is fully separable from the merits of the case . . . and therefore the Court is free to consider the extensive extrinsic evidence offered by both parties and to resolve factual disputes."). To

successfully rebut a factual challenge in a motion to dismiss in cases such as this one, where the facts governing subject matter jurisdiction do not go to the merits of the suit, *Cal. Sportfishing Prot. Alliance v. Shamrock Materials, Inc.*, No. 11-2565-MEJ, 2011 WL 5223086, at *5 (N.D. Cal. Nov. 2, 2011), the non-moving party "'must furnish affidavits or other evidence,'" *White v. Astrue*, No. 10-02124-CRB, 2011 WL 900289, at *3 (N.D. Cal. Mar. 15, 2011) (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)), to satisfy its burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Remington Lodging & Hospitality, LLC v. Ahearn*, 749 F. Supp. 2d 951, 955-56 (D. Alaska 2010); *Casillas v. United States*, No. CV-07-395, 2009 WL 735188, at *4 (D. Ariz. Mar. 19, 2009) (not reported in F Supp. 2d).

### III. Discussion

Defendant presents several arguments in support of its motion. First, it contends that the Court lacks subject matter jurisdiction over this action because Plaintiff never filed a formal administrative complaint with the VA. (Def.'s Mot. 7-14.) If the court finds that Plaintiff filed a formal administrative complaint, Defendant urges the court to dismiss this action because Plaintiff did not timely file suit. (Def.'s Mot. 18-19.) Defendant also argues that the court should dismiss Allegation 7 of Plaintiff's eight claims for failure to exhaust administrative remedies because Plaintiff did not raise them in pre-complaint counseling.[1] (Def.'s Mot. 14-15.) Finally, Defendant moves the court to grant it summary judgment on the ground that the doctrine of laches bars Plaintiff's complaint. (Def.'s Mot. 19-20.) Because the court rules that it cannot exercise subject matter jurisdiction over this matter and, in addition, that Plaintiff untimely filed this action, the court does not reach Defendant's latter two arguments.

**A. Whether Plaintiff Filed a Formal Administrative Complaint**

Failure to file a timely EEOC administrative complaint constitutes a failure to exhaust administrative remedies, a "mere[] . . . statutory requirement subject to waiver, estoppel and

---

[1] In his opposition to Defendant's motion, Plaintiff "completely with draws allegations 2, 6 & 8." (Pl.'s Resp. 3-4 (emphasis removed).) Defendant's original argument, which encompassed Allegations 2 and 6-8, thus applies only to Allegation 7. For the same reason, Defendant's assertion that Allegations 2, 6, and 8 are untimely, (Def.'s Mot. 15-17), also is moot. Plaintiff's withdrawal of his age discrimination allegations (Pl.'s Resp. 4) renders Defendant's argument that the Court lacks subject matter jurisdiction over the age discrimination claims moot as well.

6

equitable tolling." *Sommatino v. United States*, 255 F.3d 704, 709 (9th Cir. 2001) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). When a plaintiff has "*never* presented a discrimination complaint to the appropriate administrative authority," however, "the district court does not have subject matter jurisdiction" over the action. *Id.* (emphasis added) (citing *Blank v. Donovan*, 780 F.2d 808, 809 (9th Cir. 1986); *Scott v. Perry*, 569 F.2d 1064, 1065-66 (9th Cir. 1978)).

### 1. Plaintiff's Evidence

Plaintiff proffers four documents to demonstrate that he submitted a formal administrative complaint to the VA: (1) a stamped copy of the first page of his purported formal complaint with an attachment and the envelope he mailed them in, (Def.'s Mot. Ex. I; *accord* Hemenway Dep. 100:35-101:24, 103:5-24), (2) an email from Rafael Torres, the Acting Deputy Assistant Secretary for the ORM, dated November 1, 2007, (Def.'s Mot. Ex. A at 1; *accord* Hemenway Dep. 116:22-117:7), (3) an email from Rosa Franco, the Associate Deputy Assistant Secretary for ORM, dated November 11, 2007, (Def.'s Mot. Ex. B; *accord* Hemenway Dep. 137:21-138:2), and (4) a "Track & Confirm" printout from the U.S. Postal Service website, (Def.'s Mot. Ex. J; *accord* Hemenway 115:23-116:3). According to Defendant, these items do not suffice to establish that Plaintiff filed a formal administrative complaint, and the court must dismiss this case for lack of subject matter jurisdiction. (Def.'s Mot. 9.)

#### a. Item (1)

Item (1) consists of three components: the first page of a formal complaint, an attachment listing eight employment discrimination claims, and an envelope. The formal complaint page indicates that Plaintiff was its author and appears to have been signed by him on September 17, 2007. It also evidences three date stamps, two from the ORM dated October 10 and 11, 2007 and one indicating that the page was "RECEIVED" on September 25, 2007 by the Office of the Secretary within the VA. The attachment has no unique identifying markers. The envelope, addressed to the Secretary of Veterans Affairs in Washington, D.C., bears a stamp dated September 25, 2007 which reads, "Inspected Mail DVA/DOJ," another indicating that the envelope was

1  "RECEIVED" by the "VACO MAIL CENTER" in September of an indiscernible year, and the
2  notation "08" to the left of the address. (*See* Def.'s Mot. Ex. I.)

3  During his deposition and again in his opposition brief, Plaintiff asserts that he mailed his
4  formal complaint with the attachment to the Secretary of Veterans Affairs by certified mail and that
5  the agency mailed back the complaint and envelope, along with a notice of receipt. (Hemenway
6  Dep. 103:1-104:13, 109:13-25, 110:15-23, 112:10-17, 115:2-4; Pl.'s Resp. 2.)

7  Defendant questions the validity of this course of events. According to Defendant, any
8  formal complaint mailed to the Secretary of Veterans Affairs "would have been handled and
9  processed by OEDCA." (Def.'s Reply 3 (citing Kelly Decl. ¶ 4).) However, in 2007, when
10 Plaintiff's purportedly filed his formal complaint, "it was not OEDCA's practice . . . to mail the
11 complaint and envelope back to the complainant." (Def.'s Mot. 9 (citing Kelly Decl. ¶ 5).) At that
12 time, OEDCA would send a notice of receipt and a copy of the EEO counselor's report to a
13 complainant upon receipt of his formal complaint. (Def.'s Mot. 9 (citing Kelly Decl. ¶ 5).)
14 Defendant also notes that nothing on the purported attachment indicates that it was a part of a formal
15 complaint or received by OEDCA. (Def.'s Mot. 9.) Furthermore, Defendant argues that the
16 stamping on the envelope undermines the validity of Plaintiff's narrative. An envelope received by
17 OEDCA would have, "received, Office of the Secretary," stamped on it, along with "a stamp for '02'
18 or '04' . . . for routing to the Office of General Counsel ("OGC"). . . . Instead, [Plaintiff's envelope]
19 has a stamp for '08' – ORM – which it should not have." (Def.'s Mot. 9 (citing McCallum Decl.
20 ¶¶ 5-6, Apr. 6, 2012).) Defendant also suggests that the timing and circumstances of Plaintiff's
21 production of item (1) is suspicious because he failed to produce the first page of the purported
22 formal complaint until his appeal to the OFO, (Def.'s Mot. 9-10 (citing EEOC Decision at 3)), even
23 though Defendant had inquired about obtaining a copy of the formal complaint in March 2010,
24 (Def.'s Mot. Ex. N at 2-3), and did not produce the attachment and envelope until the matter reached
25 this Court, (Def.'s Mot. 10).

26 **b. Item (2)**

8

Item (2) is an email sent by Ralph Torres to Plaintiff and CCed to Willie Hensley, Principal Deputy Assistant Secretary for Human Resources and Administration, and Rosa Franco on November 1, 2007. The email states in full:

> Brian,
>
> I was pleased with the results of our joint meeting and commend you and Willy for your willingness to move forward towards a productive relationship. This email is to memorialize our commitments. I agreed to commission a climate assessment/survey of Western Operations, the nature and extent of which will be decided at a later point. In exchange, you agreed to withdraw your informal EEO complaint.
>
> Rosa will call you and Willy next week to finalize our discussions, get your ideas about how to conduct the assessment and explore how we may be able to resolve your formal EEO complaint. Rosa, Willy and I share your commitment to resolve that complaint as well.
>
> Ralph Torres

(Def.'s Mot. Ex. A at 1.)

Plaintiff claims that the Torres email demonstrates that the head of the ORM at the VA "was aware of the filing of the formal complaint in this case, and in fact acknowledged that the VA and the complainant had brought the formal complaint to the ADR process." (Pl.'s Resp. 2.) Plaintiff asserts that the email additionally "advised Willie Hensley . . . of the complainant's formal EEO complaint." (Pl.'s Resp. 2.)

Defendant contends that the email does not evidence that Plaintiff filed a formal complaint. According to Defendant, "[t]he context of the email does not show that Torres was admitting or acknowledging that plaintiff had filed a formal complaint, nor does it identify what that formal complaint was, specifically whether it was the one at issue here." (Def.'s Mot. 11.) Bolstering Defendant's assertion, Torres avers that Plaintiff has "take[n] the phrase ["formal EEO complaint"] out of context and is incorrect." (Torres Decl. ¶ 4, Apr. 9, 2012.) Torres admits that "it has been a long time and [he does not have] good recollection of the circumstances leading up to the effort to resolve Mr. Hemenway's concerns." (Torres Decl. ¶ 6.) However, he recalls that as a matter of practice, he attempted to resolve "all situations in which employees expressed disagreement with management's actions, whether they involved an actual complaint or not" and that this was one such instance. (Torres Decl. ¶ 7.) With respect to the email's reference to a formal complaint, Torres

9

insists that "[t]his would not be proof that Mr. Hemenway had actually filed a formal complaint . . . by that date. It merely reflects that he communicated to me that he had." (Torres Decl. ¶ 8.) Plaintiff concedes that he does not know if Torres even saw the purported formal complaint. (*See* Hemenway Dep. 123:19-125:7.)

#### c. Item (3)

Item (3) is an email that Rosa Franco sent to Earnestine Richardson, former manager in charge of setting up alternative dispute resolution, and CCed to Plaintiff, Torres, and Willy Jenkins, Plaintiff's then supervisor, under the subject heading "Mediation" on November 11, 2007. (Def.'s Mot. Ex. B at 1.) It states, "Please contact Brian [Hemenway] as he's expressed interest in mediating his formal complaint." (Def.'s Mot. Ex. B at 1.) According to Plaintiff, the email reaffirms the agency's receipt of his formal complaint. (Pl.'s Resp. 3.)

As with the Torres email, Defendant contends that this email "does not show that Franco was admitting or acknowledging that plaintiff had filed a formal complaint, nor does it identify what that formal complaint was, specifically whether it was the one at issue here." (Def.'s Mot. 11.) In line with this argument, Franco declares that she is "not aware that Mr. Hemenway ever filed such a complaint [and] also never received a notice from the [OEDCA] that Mr. Hemenway had filed such a complaint." (Franco Decl. ¶ 4, Apr. 9, 2012.) Addressing the email's reference to a "formal complaint," Franco states that she does not remember "ever seeing a formal complaint filed by Mr. Hemenway in September 2007." (Franco Decl. ¶ 5.) Moreover, although Franco recalls speaking with Plaintiff over the telephone in October or November 2007, she does not know if Plaintiff had filed a formal complaint at that time. (Franco Decl. ¶ 5.) According to Franco, "[w]hen [she] wrote in the November 11 email that [Plaintiff] had 'expressed interest in mediating his formal complaint,' it does not mean that [she] had seen such a complaint, and [she] do[es] not recall ever having seen one." (Franco Decl. ¶ 7.) She believes that Plaintiff "simply referenced a formal complaint in his discussions, and that formed the basis for the November 11 email." (Franco Decl. ¶ 7.) Plaintiff admits that he does not know if Franco saw the purported complaint. (Hemenway Dep. 125:4-12.)

#### d. Item (4)

10

Item (4), the Track and Confirm printout, shows that someone mailed something on September 19, 2007 from Menlo Park, California, the city where Plaintiff works, and that it arrived in Washington, D.C., somewhere in the same zip code as the VA's OEDCA on September 25, 2007. (Def.'s Mot. Ex. J.) Defendant characterizes the printout merely as evidence for "an unidentified item mailed . . . to [somewhere in] Washington, D.C., but contains no information as to what was in the mailing, much less that it was plaintiff's alleged complaint." (Def.'s Mot. 11.)

**2. Analysis**

After evaluating these four pieces of evidence within the context of the case and its procedural history, the court finds that Plaintiff has not demonstrated that he filed a formal complaint. In light of Plaintiff's documented longtime expertise as an EEO specialist, (*see* Hemenway Dep. 12:14-14:5), the court finds it improbable that Plaintiff could not produce a copy of the formal complaint that he purportedly filed until the final steps of the administrative appeals process. He, more than members of the general public, would be aware of the importance of the document to the viability of his claims. Nevertheless, Plaintiff did not produce the first page of his purported formal complaint until his appeals reached the OFO in 2010. As noted by the EEOC, Plaintiff asserted "that this evidence 'was not available' when the matter was before the AJ, and fails to explain how, when or from where it was obtained." (EEOC Decision at 3.) Plaintiff did not produce the alleged attachment to the complaint, nor the return envelope, until his case reached this Court. These unusual cascading late productions appear even more suspect because he still has offered no explanation as to how or where he obtained the previously unavailable documents and why they were "unavailable." Likewise, it is troubling that Plaintiff could have described the face of the purported complaint in detail in his supposed 2008 letter to Kelly, which Plaintiff claims was returned to him as undeliverable,[2] although he asserts that the complaint was unavailable to him for an uncertain period of time for an unknown reason: "The formal complaint was stamped as received

---

[2] Plaintiff claims he sent a letter to Kelly on September 5, 2008, and that it was returned to him as undeliverable, even though he mailed it to her correct address. (Hemenway Dep. 139:1-141:6, Def.'s Mot. Ex. K; *see* Kelly Decl. ¶ 3.) Plaintiff apparently took no steps to reconfirm her address or redeliver the letter. Yet he purportedly sent a second letter to Kelly on January 16, 2009 to the same address, which he also claims was returned as undeliverable.

11

with the endorsements 'Inspected Mail DVA/DOJ Sep 25 2007' and 'Received Sep 2007 VACO Mail Center," (Def.'s Mot. Ex. K at 1).

It also is improbable that Defendant would have mailed a formal complaint back to Plaintiff right after having first delivered it to, and subsequently retrieved it from, the ORM, as evidenced by the ORM stamps on the alleged first page of the complaint; there is no explanation why the VA would shuffle the complaint between those agency departments at that juncture. Similarly, nothing on the face of the disputed envelope demonstrates that it contained a formal complaint, let alone one relating to this case. First, the court notes that the OEDCA's contemporary practice was not to mail the complaint and envelope back to the complainant; the chain of events regarding the submission of the formal complaint to which Plaintiff attests would not have occurred as a normal part of VA procedure. In addition, the envelope does not bear a routing number stamp that indicates that the contents of the envelope were delivered to the OEDCA, as would be expected since it was addressed to the Secretary of Veterans Affairs. That Plaintiff did not produce the envelope before his case reached this Court further erodes the court's faith in its authenticity. Furthermore, it is improbable that Plaintiff did not have access to the envelope, if it indeed is genuine, yet recalled enough about its features to detail them in the letter he supposedly unsuccessfully mailed to Kelly: "The Formal Complaint envelope . . . was stamped RECEIVED by the agency on September 25, 2007 at 2:25 pm. The original stamp endorsement on the complaint [envelope] reflects: "RECEIVED 2007 SEP 25 PM 2:25 Dept. of Veterans Affairs Office of the Secretary.'" (Def.'s Mot. Ex. K at 1.)

Finally, Plaintiff acknowledges that the agency sends every complainant a notice of receipt upon filing of an official complaint. (Hemenway Dep. 23:17-20.) Yet, Plaintiff asserts that he does not have a copy of his notice of receipt because he may have accidentally shredded it. (Hemenway Dep. 104:8-105:12.) It is improbable that Plaintiff, someone deeply familiar with the EEO procedures, shredded the notice of receipt from the VA -- a notice that would have arrived in the envelope that he produced. Such a notice would have unequivocally demonstrated delivery of the complaint.

The court also finds that the references to a formal complaint in the nearly contextless Torres and Franco emails do not substantiate Plaintiff's claim. Torres and Franco's statements do not show

12

1  that they knew that Plaintiff had filed a formal complaint; they simply verify that a reference to a
2  formal complaint of some sort, real or fictional, had arisen in previous communications.

3       The Track and Confirm printout, particularly in the absence of the apparently lost certified
4  mail green card, (*see* Hemenway Dep. 109:13-25), leads the court to a similar conclusion. The
5  document demonstrates only that someone mailed something from the area near Plaintiff's place of
6  employment to Washington, D.C., somewhere in the same zip code as the VA's OEDCA, in
7  September 2007. It does not clarify what that something was, who mailed it, or to whom it was
8  mailed.

9       Viewing the record as a whole, the many improbabilities and unexplained gaps weigh against
10 a finding that Plaintiff filed a complaint. Because the court concludes that Plaintiff has not
11 established that he filed a formal complaint, the Court has no subject matter jurisdiction over this
12 matter and must dismiss it with prejudice.

13    **B. Whether Plaintiff Timely Filed Suit**

14      Assuming *arguendo* that Plaintiff filed a formal complaint and that the Court has subject
15 matter jurisdiction over this case, the court finds that Plaintiff did not timely file the current action.
16 42 U.S.C. § 2000e-5(f)(1) provides that a litigant must file suit within ninety days of receiving a
17 notice of dismissal from the EEOC. § 2000e-5(f)(1); *Payan v. Aramark Mgmt. Servs. Ltd.*, 495 F.3d
18 1119, 1121 (9th Cir. 2007). If the litigant does not file suit within this time period, "the action is
19 time-barred." *Payan*, 495 F.3d at 1121 (citing *Scholar v. Pac. Bell*, 963 F.2d 264, 266-67 (9th Cir.
20 1992)). This statute of limitations begins to run on the date that the notice arrived at the claimant's
21 address of record. *Id.* at 1122 (citations omitted). When the delivery date is unknown, as it is here,
22 the court will deem the notice to have arrived at the claimant's address three days after it was
23 mailed. *Id.* at 1121, 1125; *see also id.* at 1123 (noting presumption that "the letter issuance date is
24 also the date on which the letter was mailed"). Plaintiff may rebut this three-day rule presumption
25 by proffering "evidence suggesting that receipt was delayed beyond the presumed period." *Id.*
26 (citing *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir.2005) (holding that events causing
27 delay must be "in no way [complainant's] fault")). For example, the Second Circuit has found that
28 "'[i]f a claimant presents sworn testimony or other admissible evidence from which it could

reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive.'" *Id.* (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996)) (brackets in original).

In his discovery responses, Plaintiff testified that he does not know when he received the EEOC's notice of dismissal, (Hemenway Dep. 164:6-20, 165:16-166:2; Def.'s Mot. Ex. S (Pl.'s Resp. to Def.'s Req. for Prod. of Docs., Set One) at 3), and he offers no evidence to rebut the three-day presumption rule. The court therefore must turn to the rule to calculate the imputed day of receipt. The EEOC issued the letter on October 29, 2010, (EEOC Decision at 5), and the court infers that the EEOC mailed the letter on the same day. *See Payan*, 495 F.3d at 1123. The ninety-day window for Plaintiff to file suit therefore commenced three days later, on November 1, 2010. *See id.* at 1121. To comport with the statute of limitations, Plaintiff needed to file suit no later than January 30, 2011. Because Plaintiff filed his complaint on February 2, 2011 – three days after the deadline – the court must dismiss the suit as untimely.

## IV. Conclusion

For the foregoing reasons, the Court lacks subject matter jurisdiction over this case. Even if the Court could exercise subject matter jurisdiction, Plaintiff untimely filed his suit. The court therefore dismisses Plaintiff's complaint.[3]

IT IS SO ORDERED.

Dated: July 9, 2012



_____
DONNA M. RYU
United States Magistrate Judge

---

[3] The court denies Plaintiff's request to withdraw his complaint without prejudice, [Docket No. 56], as moot.